1      IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF KANSAS
2                 TOPEKA, KANSAS


3

       UNITED STATES OF AMERICA,    )  *ORIGINAL*
4      ------------------ Plaintiff,)
                                     )
5           vs.                      )  Case No.
                                     )  10-10090-JAR
6      JASON D. CROUCHER,            )
       ------------------ Defendant.)

7

8          TRANSCRIPT OF CHANGE OF PLEA HEARING

9           PROCEEDINGS had before the Honorable

10     Julie A. Robinson, United States District

11     Court Judge, for the District of Kansas,

12     Topeka, Kansas, on the 13th day of October,

13     2010.


14

       APPEARANCES:

15

       For the Plaintiff:  Jason W. Hart
16                          Asst. U.S. Attorney
                            301 North Main Street
17                          Suite 1200
                            Wichita, KS  67202-4812
18
       For the Defendant:  Thomas D. Haney, Esq.
19                          HENSON, HUTTON, MUDRICK &
                              GRAGSON, LLP
20                          100 S.E. 9th Street
                            Second Floor
21                          Topeka, KS  66612

22                          Jason D. Croucher
                            Defendant
23
       Court Reporter:     Sherry A. Harris, C.S.R.
24

25

```
1                      PROCEEDINGS
2              THE COURT:  All right.  The first
3      case we'll call is United States versus Jason
4      Croucher, 10-10090.  Your appearances,
5      please.
6              MR. HART:  May it please the Court,
7      the United States appears by and through
8      Jason Hart, Assistant United States Attorney.
9              MR. HANEY:  If it please the Court
10     and counsel, Mr. Croucher is here in person
11     and by his attorney, Tom Haney.
12             THE COURT:  All right.  We're here
13     for a change of plea this morning on
14     Mr. Croucher.
15             Mr. Croucher, if you will stand and
16     raise your right hand, we'll administer an
17     oath.
18                  (THEREUPON, the defendant was
19     sworn in open court).
20             THE COURT:  All right.  You can be
21     seated.  Tell me your full legal name and
22     your age.
23             THE DEFENDANT:  Jason Dale
24     Croucher--
25             THE COURT:  All right.
```

1          THE DEFENDANT:  --and I am 27.

2          THE COURT:  I'm sorry, 27?

3          THE DEFENDANT:  27, yes, ma'am.

4          THE COURT:  What's your highest

5     level of education?

6          THE DEFENDANT:  I completed two

7     years of college.

8          THE COURT:  All right.  Have you

9     undergone treatment recently for any mental

10    health issues or for drug or alcohol abuse or

11    addiction?

12          THE DEFENDANT:  I am currently

13    receiving prescription drugs to treat

14    depression and anxiety I had prescribed by my

15    personal physician.

16          THE COURT:  All right.  Do those

17    prescribed drugs affect your cognitive

18    functioning at all, your ability to

19    understand?

20          THE DEFENDANT:  No.

21          THE COURT:  All right.  Other than

22    those drugs, are you under the influence of

23    any other drug, medication, or alcoholic

24    beverage?

25          THE DEFENDANT:  No.

1              THE COURT:  Now in this case you

2       were charged by way of a grand jury

3       indictment.  Have you received a copy of the

4       grand jury indictment?

5              THE DEFENDANT:  Yes.

6              THE COURT:  And do you understand

7       what you're charged with?

8              THE DEFENDANT:  Yes.

9              THE COURT:  You've gone over the

10      charges with Mr. Haney?

11             THE DEFENDANT:  Yes.

12             THE COURT:  All right.  And in

13      addition to going over the charges with you,

14      has Mr. Haney discussed with you the evidence

15      that the government disclosed that they had

16      against you?

17             THE DEFENDANT:  Yes.

18             THE COURT:  All right.  Has he

19      discussed with you the process and procedures

20      you could expect throughout your case?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Did he talk to you about

23      your right to a jury trial?

24             THE DEFENDANT:  Absolutely.

25             THE COURT:  And discuss with you how

1          the Court goes about determining an

2          appropriate sentence using sentencing

3          guidelines as well as a sentencing statute?

4          Did he talk to you about that?

5                    THE DEFENDANT:  He's explained to me

6          the statute--

7                    THE COURT:  All right.

8                    THE DEFENDANT:  --and the

9          presumptive guidelines.

10                   THE COURT:  All right.  And have the

11         two of you gone over the plea agreement

12         together?

13                   THE DEFENDANT:  Yes, Your Honor.

14                   MR. HANEY:  There is no-- there is

15         no plea agreement.

16                   THE COURT:  There is no plea

17         agreement, that's correct.

18                   THE DEFENDANT:  I apologize.

19                   THE COURT:  That's all right.

20         There's a document called a petition to enter

21         plea.  Have the two of you gone over that

22         document together?

23                   THE DEFENDANT:  Yes.

24                   THE COURT:  All right.  Are you

25         satisfied with the advice and representation

1          that Mr. Haney has given you in this case?

2                    THE DEFENDANT:  Most certainly.

3                    THE COURT:  All right.  Whose

4          decision was it for you to enter into this

5          plea of guilty?

6                    THE DEFENDANT:  It is my own.

7                    THE COURT:  Has anyone threatened

8          you or coerced you or placed you under duress

9          to get you to make the decision to plead

10         guilty?

11                   THE DEFENDANT:  No.

12                   THE COURT:  So is it fair to say

13         that you made the decision voluntarily and of

14         your own free will?

15                   THE DEFENDANT:  Absolutely, ma'am.

16                   THE COURT:  All right.  And

17         understand, Mr. Croucher, that by pleading

18         guilty you are waiving or giving up your

19         right to a jury trial.

20                   THE DEFENDANT:  Yes.

21                   THE COURT:  Now if you chose not to

22         plead guilty, I would set this case for a

23         jury trial.  I believe we already had a date.

24         It would be tried to a jury of 12.

25                   THE DEFENDANT:  Uh-huh.

```
1              THE COURT:  You would continue to
2       have the right to be represented by counsel
3       throughout the course of the trial, whether
4       or not you could afford to pay for counsel
5       throughout that duration.
6              THE DEFENDANT:  Uh-huh.
7              THE COURT:  You, as an accused
8       person, are presumed to be innocent of these
9       charges.  And that is something that I would
10      instruct the jury about in great detail, that
11      the presumption of innocence is something
12      that we all enjoy and have an entitlement to
13      and do have as a matter of course.  I would
14      tell the jury that what the presumption of
15      innocence means is that someone such as
16      yourself who is accused of a crime has
17      absolutely no responsibility or obligation to
18      produce evidence or to prove anything.  That
19      in a criminal case only the government has a
20      burden of proof.  Their burden of proof is
21      they must establish guilt, if they can,
22      beyond a reasonable doubt.
23              THE DEFENDANT:  Yes, ma'am.
24              THE COURT:  Fairly heavy burden of
25      proof.
```

1          I would instruct the jury that the

2     presumption of innocence means that you have

3     no obligation to call witnesses or testify.

4     And, for example, Mr. Croucher, if you did

5     not testify, I would be specifically

6     instructing the jury that they're not allowed

7     to factor that into their decision-making

8     process at all.  Not think about it, talk

9     about it, allow that to influence their

10    decision-making.  Because if they did, in

11    effect they would be denying your right to be

12    presumed innocent.

13          THE DEFENDANT:  Uh-huh.

14          THE COURT:  Now, although you have

15    no obligation, as I've said, to present

16    evidence in a trial, you would have the right

17    to if you wanted to.  You would have the

18    right to testify.  If you wanted to call

19    witnesses, you would have available to you

20    the Court's subpoena power to do so.  And

21    whether or not you produced evidence or

22    presented a defense, you would always have

23    the right to confront and cross-examine the

24    government's witnesses and perhaps in that

25    way to point the jury to reasonable doubt in

1          the evidence.

2                    The jury could not convict you

3          unless, after hearing all of the evidence and

4          deliberating, they unanimously reached the

5          decision that the government had produced

6          sufficient evidence to prove guilt beyond a

7          reasonable doubt.  Do you understand that?

8                    THE DEFENDANT:  I do, yes, ma'am.

9                    THE COURT:  All right.  And this

10         package of rights we refer to when we speak

11         of a right to a jury trial, you are now

12         giving up, you're waiving, because you've

13         made the decision to enter a plea of guilty.

14                   THE DEFENDANT:  Yes, ma'am.

15                   THE COURT:  All right.

16                   Mr. Croucher, the indictment charges

17         you with three counts-- three offenses as

18         well as a forfeiture allegation.  Are you

19         pleading guilty to all three counts and

20         conceding or admitting to the forfeiture

21         allegation as well?

22                   THE DEFENDANT:  I am pleading guilty

23         to all three counts.  We have not discussed

24         the forfeiture issue as of yet with my

25         attorney.

1           THE COURT:  All right.  So the

2     forfeiture allegation is something that will

3     be resolved at a later time?

4           MR. HANEY:  I think so, Your Honor.

5     One of the things I have not had a chance to

6     talk to Mr. Hart about is those computers

7     contain a number of family photographs.  I

8     think we can work that out, but we haven't at

9     this point.

10          THE COURT:  All right.

11          All right.  Counts 1 through 3 are

12    all-- they're each felony offenses.  They're

13    offenses for which you could potentially

14    serve more than one year in custody,

15    Mr. Croucher, so they're classified as

16    felonies.  And there are civil rights

17    consequences of being adjudicated guilty of

18    any felony.  You lose the right to vote, you

19    lose the right to serve on a jury, you lose

20    the right to serve in certain public offices,

21    you lose the right to possess or purchase a

22    firearm or dangerous weapon, and if you are

23    not a natural born citizen or a naturalized

24    citizen of the United States, there are

25    deportation consequences.  Do you understand

1          that?

2                     THE DEFENDANT:  I do, yes, ma'am.

3                     THE COURT:  All right.  And then, of

4          course, there are potential sentencing

5          consequences, and you've told me that

6          Mr. Haney has discussed with you that

7          process.

8                     THE DEFENDANT:  Yes, ma'am.

9                     THE COURT:  The Court begins with

10         sentencing guidelines.  They are not

11         mandatory.  They are advisory.  There's a

12         guideline, for example, that is specific to

13         the offenses that you are pleading guilty to.

14         So the Court starts its analysis with that

15         guideline.  I believe there are enhancements,

16         in other words exposure to longer sentences,

17         depending on the number of images; depending

18         on, for example, if there are particular

19         types of images involving violence or

20         sadomasochism.  There are enhancements for

21         that.  Meaning a potentially longer sentence.

22                     The Court will be considering under

23         the sentencing guidelines what's called

24         relevant conduct.  Now you're pleading guilty

25         to Counts 1, 2, and 3--

1              THE DEFENDANT:  Yes, ma'am.

2              THE COURT:  --in this indictment.

3      Relevant conduct includes if there were

4      counts you were not pleading guilty to I

5      would nonetheless consider those.  But it

6      could also include uncharged conduct that is

7      related to the conduct that you're charged

8      with.  I don't know if that exists or not in

9      this case, but sometimes it does.  And that

10     is wrapped into the Court's consideration as

11     well because the idea is that the Court

12     sentences on the basis of the entirety of the

13     criminal conduct, not on the basis of a

14     narrow, you know, plea to part of it.

15             At the same time, the Court

16     sentences on the entirety of who the person

17     is that's appearing in front of the Court.

18     And between the advisory guidelines and then

19     the sentencing statute the Court considers

20     such things as your criminal history, if you

21     should have any.

22             In fact, under the guidelines you

23     get a score based on the number of prior

24     felonies, misdemeanors, et cetera.  But the

25     Court considers all factors, positive and

13

1   negative.  Your current circumstances and

2   your past circumstances concerning family,

3   education, employment, health issues, mental

4   health issues.  In other words, the Court

5   sentences and determines a sentence based on

6   the entirety of criminal conduct and the

7   entirety of the person.

8            For this reason, Mr. Croucher, it is

9   impossible for me to predict to you with

10   certainty what sentence you'll receive.  Do

11   you understand that.

12            THE DEFENDANT:  Yes, ma'am.

13            THE COURT:  Mr. Haney can't predict

14   what sentence you'll receive, the prosecutor

15   cannot predict at this point.  Do you

16   understand that?

17            THE DEFENDANT:  Yes.

18            THE COURT:  All right.  What we can

19   tell you with certainty is that the statute

20   for these three offenses sets a maximum

21   penalty.  In some cases it sets a mandatory

22   minimum penalty too.  So I'll ask the

23   prosecutor to share with us what the

24   statutory penalties are on these three

25   counts.

1        MR. HART:  Your Honor, with regard

2   to Count 1 and 2, the statutory maximum is

3   20 years, with no criminal history, and the

4   mandatory minimum is a five years.  For

5   Count 3, the statutory maximum is a maximum

6   of 10 years.  Does that answer the Court's

7   question?

8        THE COURT:  You said Count 3 has a

9   mandatory minimum of 10 years?

10       MR. HART:  I'm sorry, a maximum.

11       THE COURT:  A maximum?

12       MR. HART:  Which is not mandatory.

13       THE COURT:  All right.

14       MR. HART:  The maximum is 10 years

15   on that count.  There is no mandatory minimum

16   for the possession count.

17       THE COURT:  All right.  Counts 1 and

18   2, however, have a five-year mandatory

19   minimum?

20       MR. HART:  That is correct, Your

21   Honor.

22       THE COURT:  Five to 20 years, in

23   other words?

24       MR. HART:  Correct.

25       THE COURT:  As does the statute

1          require consecutive sentences, or can those

2          mandatory minimums be concurrent?

3                    MR. HART:  They can be concurrent,

4          Your Honor.

5                    THE COURT:  All right.

6                    All right.  Mr. Croucher, do you

7          understand what penalties you face under the

8          statute?

9                    THE DEFENDANT:  Yes, ma'am.

10                    THE COURT:  So irrespective of the

11          analysis the Court goes through, the Court is

12          not authorized to sentence you to anything

13          less than five years of actual custody time

14          in prison with your plea to Counts 1, 2, and

15          3.  Do you understand that?

16                    THE DEFENDANT:  Yes, ma'am.

17                    THE COURT:  It's called a mandatory

18          minimum.  It means the Court has no authority

19          to sentence to anything under five years.

20          Now there are two exceptions to the mandatory

21          minimum that would allow the Court to

22          sentence you to something under five years.

23          I don't know if either of these exceptions

24          applies to you.  I'll explain them to you in

25          brief though.

1          The first is the safety valve

2     exception.  And I believe for this type of

3     offense the safety valve exception does not

4     apply, generally speaking.

5          The other is the substantial

6     assistance exception.  The way this exception

7     works is if you cooperated with the

8     government and if the government unilaterally

9     decided that your assistance was sufficient

10     enough to meet the standards of substantial

11     assistance, then the government would file a

12     motion with me, and that would then authorize

13     me at the time of sentencing to sentence you,

14     or at least consider sentencing you, to

15     something under the mandatory minimum.

16          But, even if you cooperate, there's

17     no guarantee the government will file that

18     motion.  I can't force them to file it.  You

19     can't force them to file it.  The statute,

20     the law, allows them to make the unilateral

21     decision of whether the assistance is

22     sufficient.

23          So other than those two exceptions,

24     Mr. Croucher, understand that I must sentence

25     you to at least five years of custody.

1              THE DEFENDANT:  Yes, ma'am.

2              THE COURT:  And we have what's

3     called a determinate sentencing system.  So

4     some sentencing systems the judge gives you a

5     sentence and then you can get a reduction in

6     that sentence by going in front of a parole

7     board or parole commission.  We don't have

8     that in the federal system.  Haven't had it

9     for many, many years.  So whatever sentence

10    the sentencing judge gives you is essentially

11    the amount of time you can expect to serve.

12    It's called a determinate sentencing system.

13    Do you understand that?

14              THE DEFENDANT:  I do.

15              THE COURT:  All right.

16              MR. HANEY:  Your Honor, I know it's

17    not at all within the Court's control, but I

18    have explained to Mr. Croucher the

19    possibility that the Bureau of Prisons would

20    allow good-time credits; but that's within

21    their jurisdiction, not the Court's.

22              THE COURT:  Correct.  The Bureau of

23    Prisons is under the executive branch of the

24    government, and the Court has absolutely no

25    control over this other branch.  Or very

1          limited.  At least not in respect to the

2          good-time credit.  But, yes, that is

3          available through the Bureau of Prisons.  If

4          they decide that you qualify, then that's one

5          opportunity -- or the only opportunity really

6          -- to get any sort of time off.  And I

7          believe it's maximum is 15 percent off per

8          year.

9                    All right.  Counsel, would you tell

10         us the factual basis for a plea to Counts 1,

11         2, and 3?

12                    MR. HART:  Your Honor, I note that

13         the plea agreement (sic) does include a

14         one-line factual basis.  I will be providing

15         additional facts.

16                    THE COURT:  There is a plea

17         agreement?  Or you mean the plea petition?

18                    MR. HART:  I'm sorry, Your Honor,

19         the plea petition.

20                    THE COURT:  Okay.

21                    MR. HART:  Your Honor, if this

22         matter proceeded to trial, the government

23         would present the following facts.  In the

24         course of investigating an individual engaged

25         in the distribution of child sexual abuse

1    images, FBI agents in San Diego took control

2    of a file-sharing account operated by that

3    individual.  The account operated under the

4    name "DicksR4Kids1," and was part of an

5    "invite only" peer-to-peer file-sharing

6    network.  FBI agents used this account to

7    infiltrate the "invite only" file-sharing

8    network and identified other users that were

9    engaged in sharing with "DicksR4Kids1."

10           On May 11th, 2009, using the

11   "DicksR4Kids1" account, the FBI agents in

12   San Diego connected with an account named

13   "Brad's_cocky," and downloaded 562 files from

14   that account via the internet.  Those files

15   included the following titles:  "10 yo boy

16   fucked by dad gay 1(2)(2)"; "little 8yo

17   preteen boy sucks 9yo friend as they both

18   jack daddy - kdv rizmasta rizmastar pjk rbv";

19   REALLY SICK 9yo boys fucking in the ASS

20   Preteen Pedo Boys P1," and so forth.  Titles

21   very similar in names to those and other

22   titles that were just numerical in nature.

23           On May 14th, 2009, FBI again

24   connected with "Brads_cocky" and downloaded

25   eight files.  Those files included the

1          following titles:  "2yo learning how to fuck

2          (10)"; "3Yo With Babysitters 14 Yo Dick" and

3          other such titles.

4               The files received from:

5          "Brads_cocky" included hundreds of images

6          depicting minors engaged in sexually explicit

7          conduct, including prepubescent minors and

8          acts of penetration, sodomy, or other sexual

9          violence upon prepubescent minors.  Of those

10         images, well over 100 files were subsequently

11         identified as known victims of child sexual

12         abuse from known series of child pornography.

13              Subsequent investigation, including

14         grand jury subpoena to an ISP provider,

15         revealed that the IP address associated with

16         "Brad's_cocky" returned to the defendant,

17         Jason Croucher, at 205 South 8th Street in

18         Osage City, Kansas.  A search warrant was

19         executed at that residence on June 22nd,

20         2009.  The defendant, Jason Croucher, was

21         present at the time of the search, and agreed

22         to an interview by law enforcement.  He was

23         not under arrest, nor in custody at the time

24         of the interview.

25              During his interview, the defendant,

1    Jason Croucher, identified his computers, a

2    Mac laptop and Dell desktop.  Mr. Croucher

3    also identified several of his screen names,

4    which included "Brad's_cocky."  Croucher

5    admitted to chatting on-line, using Internet

6    Relay, or IRC, and using both Limewire and

7    Gigatribe "invite only" peer-to-peer

8    file-sharing programs.  The latter being the

9    "invite only" file-sharing program, the

10   former just being a more generic publicly

11   available file-sharing program.  He

12   acknowledged awareness of the file-sharing

13   nature of his saved files.  He admitted using

14   search terms such as "sons&daddys."  Croucher

15   admitted to chatting on IRC with an

16   individual by the name "zdasher" and getting

17   a Gigatribe invite from "zdasher," then

18   downloading 100 files per "zdasher's"

19   instructions.  He claimed to have deleted

20   child pornography after discovering it.

21   However, he later admitted to moving the

22   child pornography from his Dell desktop to

23   his Mac laptop via his iPod Nano.  The

24   defendant, Jason Croucher, advised that his

25   co-habitating boyfriend knew nothing about

1          his collection.

2                    Subsequent forensic analysis of

3          Croucher's computers revealed the following:

4                    On Mr. Croucher's Dell desktop, the

5          analyst found the Gigatribe program had been

6          installed, and the "Brad's_cocky" profile had

7          been used.

8                    The analyst found the IRC chat log

9          which included the apparent original

10         Gigatribe invitation, occurring on

11         January 11th, 2009, with an individual by the

12         name "schlaf3n," which was spelled

13         S-C-H-L-A-F-3-N.  In this IRC chat, the

14         defendant boasted of his child pornography

15         image collection but complained about

16         the lack of child porn videos on Limewire,

17         and was informed of encrypted peer-to-peer

18         qualities of Gigatribe.  The "schlaf3n" user

19         walked him through the download process,

20         through both the uploading and sharing

21         process.  The defendant, finally able to

22         access "schlaf3n's" collection then types,

23         "yay!  you've made my day lol."  During this

24         chat, these two were also discussing

25         "schlaf3n's" request for, quote, any good

1          crying or whimpering vids?" to which the

2          defendant offered ":) one of a guy with a

3          really tiny baby girl."

4                  The analyst also found the IRC chat

5          log which included the invitation from the

6          defendant to "DicksR4Kids1," the account

7          later used which the FBI.

8                  The analyst found numerous IRC chat

9          logs which occurred in chat rooms titled:

10         "boylovers_into_boylovers," "gaydads4sons,"

11         "baby&toddlerlove," littleboysexchannel," and

12         "man&boy4chat."

13                 The analyst found Yahoo chat logs

14         with "zdasher," the individual identified by

15         Mr. Croucher; however, they did not reflect

16         Croucher's claim of blindly following

17         "zdasher's" instructions.  The "zdasher" chat

18         included discussion of the defendant's

19         experience of, quote, never stopped wanted to

20         fuck hairless boys...form there...just

21         started wanting younger and younger," as well

22         as his explanation of using his PC, the Dell

23         desktop, at the time of the chat to access

24         his Gigatribe account because the

25         file-sharing program did not have a Mac

1      interface.  After accessing "zdasher's"

2      collection, during the chat Mr. Croucher

3      types, "damn I'm glad I met you today...new

4      boy porn is going to make this week fucking

5      awesome!"  This is logged May 11th, 2009.

6            The analyst did find evidence of

7      child pornography on the Dell desktop,

8      including files apparently traded through

9      Yahoo Photo Sharing sessions.  However, most

10     of the child pornography had been moved from

11     that computer to the defendant's Mac laptop.

12            On Mr. Croucher's Mac laptop, the

13     analyst found Limewire had been installed

14     with nine child pornography videos in the

15     shared "save" folder.  This computer also

16     contained over 700 images of child

17     pornography, including infants and bondage,

18     along with 14 child pornography videos.  The

19     analyst found chat logs indicating a

20     substantial interest in child rape,

21     pedo-snuff, and active trading of child

22     sexual abuse images.  The analyst found IRC

23     channels with names like "!!!!!pedosnuffsex."

24     The child pornography files were located

25     under the following file structure, which

1        mirrored that observed on the Dell desktop.

2        That would have been

3        "users/jason/documents/jason/dominion_

4        ultimate.exe/new folder 3."

5              On both computers the analyst found

6        IRC chat logs which discussed an interest,

7        both historical and ongoing, in the

8        molestation of children, with a particular

9        and repeated interest in hearing babies cry

10       while raping or sodomizing them.

11             These acts constitute the knowing

12       distribution of child pornography on May 11

13       and May 14th, 2009, as well as the knowing

14       possession of child pornography on June 22nd,

15       2009, the date of the search warrant.  Those

16       acts occurring in the District of Kansas.

17             THE COURT:  Is there any evidence

18       that any of these videos or images that had

19       snuff in the title involved real acts or

20       victims that actually were killed?

21             MR. HART:  Your Honor, I don't have

22       any indication of any videos that actually

23       showed a child being killed, and I do not

24       have any information that any of the known

25       files are deceased victims.

1          THE COURT:  All right.  Thank you.

2          All right.  Mr. Croucher, let me ask

3     you two questions about what Mr. Hart just

4     read.  Do you believe the government has the

5     evidence to prove what he just summarized for

6     us?

7          THE DEFENDANT:  With some caveats to

8     his sentence structure and his choice of

9     words, yes.

10          THE COURT:  All right.  Anything

11     material though to--

12          THE DEFENDANT:  The material facts

13     that the images were there, that the-- that

14     the videos were downloaded, I don't have any

15     objection to any of that.

16          THE COURT:  All right.  So you agree

17     that essentially they have the evidence to

18     prove that.

19          And then my next question is

20     related.  Did you in fact do what you're

21     charged with in Counts 1, 2, and 3?  On

22     Count 3, at the time of the search warrant,

23     did you possess visual depiction of minors

24     engaging in sexually explicit conduct, those

25     images having moved in interstate commerce in

1          the sense that they didn't originate in

2          Kansas but transported in interstate commerce

3          by means of computer?

4                    And then on these other two dates,

5          May 11, 2009, which is the date in Count 1,

6          May 14th, 2009, in Count 2, did you knowingly

7          and intentionally receive and distribute by

8          computer visual depictions of minors engaging

9          in sexually explicit conduct, again, these

10         being images or videos that had travelled in

11         interstate commence by computer?  Did you do

12         that?  All three of these offenses?

13                    THE DEFENDANT:  I have no idea as to

14         where the images travelled to and from.  I

15         know that the images were received on my

16         computer from somewhere else--

17                    THE COURT:  All right.

18                    THE DEFENDANT:  --but I cannot

19         attest to whether or not they arrived from

20         somewhere in Kansas or from somewhere out of

21         the state.

22                    THE COURT:  All right.  But you

23         acknowledge that you received them in

24         Kansas--

25                    THE DEFENDANT:  Yes.

1          THE COURT:  --through transmission

2     by computer?

3          THE DEFENDANT:  I acknowledge that.

4          THE COURT:  All right.

5          All right.  Mr. Haney, have the two

6     of you filled out a petition to enter plea?

7          MR. HANEY:  We have, Your Honor.

8          THE COURT:  All right.

9          Mr. Croucher, if you're ready to

10     sign that, we'll have you sign it and then

11     acknowledge your signature on the petition.

12              (THEREUPON, the defendant's

13     signature was acknowledged in open court).

14          THE COURT:  All right.

15     Mr. Croucher, if you'll raise your right

16     hand.

17              (THEREUPON, the defendant's

18     signature was acknowledged in open court).

19          THE COURT:  All right.  Remain

20     standing.

21          Mr. Haney and Mr. Hart, do you know

22     of any reason why the Court should not take

23     Mr. Croucher's plea at this time?

24          MR. HART:  The government knows of

25     none, Your Honor.

1          MR. HANEY:  No legal reason, Your

2     Honor.

3          THE COURT:  Mr. Croucher, would you

4     like me to read aloud to you Counts 1, 2, and

5     3 of the indictment, or do you waive the

6     reading of the indictment?

7          THE DEFENDANT:  I'll waive the

8     reading of the indictment.

9          THE COURT:  How do you plead then to

10     Counts 1, 2, and 3?

11          THE DEFENDANT:  Guilty, Your Honor.

12          THE COURT:  All right.  You can be

13     seated.

14          THE DEFENDANT:  Thank you.

15          THE COURT:  The Court is satisfied

16     and finds that the defendant, Jason Croucher,

17     is mentally competent at today's hearing and

18     was at the time of the commission of these

19     offenses.  The Court finds that Mr. Croucher

20     enters his plea on an informed basis.  He's

21     had the advice and representation of very

22     experienced and competent counsel.  And

23     supplemented by his colloquy with the Court

24     today, the Court is satisfied that

25     Mr. Croucher is aware and knowledgeable of

1     the charges, the factual and evidentiary

2     bases for the charges, his right to a jury

3     trial, the process and procedures of the

4     Court, and the potential civil rights and

5     sentencing consequences of pleading guilty.

6            I find that the plea is knowingly

7     and voluntarily entered into, and further

8     find that it is supported by an independent

9     basis in fact containing each of the

10     essential elements of the offense.  So the

11     plea is accepted.  Mr. Croucher is adjudged

12     guilty of Counts 1, 2, and 3.

13            Mr. Hart and Mr. Haney, you'll need

14     to advise the Court what you want to do about

15     the forfeiture allegation, whether we need to

16     set that for a status conference at some

17     point or wait until the sentencing hearing.

18            I'll order a presentence report, and

19     schedule sentencing for December 20th at

20     9 a.m.  This is mandatory--

21            MR. HART:  What is the date, Your

22     Honor?

23            THE COURT:  I'm sorry?

24            MR. HART:  What was that date?

25            THE COURT:  December 20--

1           MR. HART:  Thank you, Your Honor.

2           THE COURT:  --at 9 a.m.

3           This is a mandatory detention case

4    so I'm going to remand Mr. Croucher to the

5    marshals' custody at this point.  The statute

6    requires that he go into custody.  And he's

7    had some difficulties on pretrial supervision

8    as well, which lead the Court to conclude

9    there's no extraordinary circumstances that

10   the Court should determine to take this out

11   of the mandatory detention.  So I'll remand

12   Mr. Croucher to the custody of the marshal

13   service at this time, and I'll see you all

14   back on December 20th at 9 a.m.

15           We will recess this hearing and the

16   next case we'll call is Derrick Moore.

17           MR. HANEY:  Could Your Honor put on

18   the record what the statutory cite is for

19   mandatory detention prior to sentencing?

20           MR. HART:  Your Honor, I believe

21   it's 18 U.S.C. 3143.  And I can't recall, I

22   think it's subsection (b).

23           THE COURT:  Let's wait.  Let's wait.

24   We have a pending question here.  I think

25   it-- I think it actually is in the charging

1              statute, perhaps, but let me look at it.

2                        MR. HANEY:  And I say that because,

3              Your Honor, I don't know that either

4              Mr. Hart-- I know he has a position

5              concerning Mr. Croucher being taken into

6              custody, but I don't think either one of us

7              realized or assumed that this was mandatory

8              that Mr. Croucher be taken into custody

9              today.  Which I do have certainly an argument

10             to present.  The Court realizes it's a

11             discretionary call, of course, of what the

12             Court will do.

13                        THE COURT:  There are certain

14             offenses, and many of them are drug offenses,

15             but as I understand it within the child

16             pornography statutes as well.

17                        MR. HART:  Your Honor--

18                        (THEREUPON, the Court and the

19             probation officer conferred off the record).

20                        MR. HART:  Your Honor, I believe the

21             statutory cite that you're looking for is

22             18 U.S.C. 3143(a)(2).  This relates to

23             certain crimes that are articulated in 3142.

24             And in this particular instance it says under

25             (a)(2):  The judicial officer shall order

1          that a person who has been found guilty of an

2          offense in a case described in subparagraph

3          (A), (B), or (C) of subsection (f)(1) of

4          section 3142, that being one of the

5          distribution type of offenses.

6                    THE COURT:  All right.  It's under

7          detention hearing.  3142 (f)(1)(A) "a crime

8          of violence, or an offense listed in section

9          2332b(g)(5)(B) for which a maximum term of

10         imprisonment of 10 years or more is

11         prescribed."

12                   That's the-- that's the section

13         you're referring to, Mr. Hart?

14                   MR. HART:  That is the section that

15         is referred to in 3143.  Which 3143 is the

16         statutory section that indicates the Court

17         shall remand a person convicted or found

18         guilty of one of those types of offenses.

19                   MR. HANEY:  Unless--

20                   THE COURT:  So are you telling me

21         that this offense qualifies as a crime of

22         violence under Section (f)(1)(A)?

23                   MR. HART:  Yes, Your Honor.  And I

24         believe it also qualifies under (C), which is

25         "an offense for which a maximum term of

1          imprisonment of ten years or more is

2          prescribed."  This actually has a maximum

3          term of 20 years.

4                    THE COURT:  That only relates to the

5          Controlled Substances Act.  I think it-- I

6          think it falls within the language of a crime

7          of violence.  And I would have to do a

8          walk-through of the statutory sections.  If

9          you can refer me to the statutory definition

10         of crime of violence.  But I'm pretty sure

11         this qualifies.

12                    But I have to tell you that even if

13         this weren't a mandatory detention case, I'm

14         concerned about the violations that

15         Mr. Croucher has committed while on pretrial

16         detention, or pretrial release, and so I

17         would order him into custody on those bases.

18         Ms. Kerns has provided me with a report that

19         reflects that there's been several

20         violations.

21                    The first one isn't as of quite

22         concern to the Court, and that is that

23         Mr. Croucher has worked a part-time job four

24         to eight hours per weekend.  He has been

25         advised he has to find full-time employment.

1          That's what his conditions require.  But he

2          did not seek further employment.  And

3          Mr. Croucher advised Ms. Kerns on

4          September 23rd there was no need to look for

5          employment due to his coming change of plea.

6                    Now of much more concern is that

7          Mr. Croucher has left his location monitoring

8          box at home on two occasions, August 29 and

9          September 11th, and he was placed on lockdown

10          as a result of that violation.

11                    He's also not followed through with

12          his co-pay amounts for location monitoring.

13          He's made only two payments, on June 18th and

14          July 30th, and his current balance with that

15          system is $396.75.  That, I'm sure, is a

16          function of the fact that Mr. Croucher hasn't

17          been working.

18                    But I am concerned primarily with

19          his violating the very important condition of

20          his whereabouts, always with subject

21          monitoring, something that can't be done if

22          he's not complying with the requirement and

23          leaving the box at home.

24                    All right.  Mr. Haney, I'll hear

25          anything more you have to tell me.

1          MR. HANEY:  Thank you, Your Honor.

2     If it please the Court, we well realize it's

3     within the Court's discretion whether to

4     incarcerate Mr. Croucher today as a result of

5     his plea.  We don't think that it's mandatory

6     of the Court based on the statute.  We think

7     the test which the Court should apply under

8     18 U.S.C. Section 3143 is that by clear and

9     convincing evidence is it likely that

10     Mr. Croucher will flee, number one.  And,

11     number two, is it likely that he will pose a

12     danger of safety to others?  Those are the

13     two considerations we think the Court should

14     address in this matter.  And, realizing that

15     even if Mr. Croucher is incarcerated today,

16     he gets credit for all the time that he has

17     from today on toward his ultimate sentence.

18     But we don't believe it's mandatory.

19          Your Honor, if it please the Court,

20     I wasn't aware until today that there was any

21     real problem with forgetting his monitor or

22     not paying in a timely fashion.  I think the

23     payment should be current, as far as I know.

24     And there certainly wasn't anything filed

25     with the Court or counsel concerning a

1          violation of his pretrial release in that

2          regard.

3                    But to address what we think are the

4          Court's concerns in this matter, that, number

5          one, whether there's a likelihood that the

6          defendant would flee, I would remind the

7          Court, because the Court may already know,

8          that between the initial search warrant

9          issued in this case and the indictment, there

10         was a 13-month period when the defendant was

11         free, under no restrictions whatsoever.  And

12         he has been on pretrial release since his

13         arrest and there has not been a probationary

14         release violation filed, or one heard by the

15         Court.

16                   These matters to which the defendant

17         has entered his plea are certainly serious.

18         And I don't mean to degrade the seriousness

19         of any of this.  But it does involve activity

20         by Mr. Croucher when he was sitting in his

21         house on his computer.  There is no-- there

22         is no allegation that he had any contact with

23         minors, that he approached minors, that he

24         intended to meet with minors, that he

25         produced any of this information, that he

1          sold any of it, that he bought any of it.  He

2          used his computer.  And that violates the

3          law.  There isn't any question of that.

4                    He has been living at home with his

5          mother.  He has been working at a car wash.

6          A full-time job is not the easiest thing to

7          come by.  He has been working.  He has

8          another prospect involving telephone contacts

9          which he is currently looking into.

10                    Additionally, Your Honor, the

11         importance of Mr. Croucher remaining on

12         pretrial release, given the fact that he's

13         not likely to flee or impose a danger, is to

14         assist his attorney regarding sentencing.

15         Sentencing in this case could be any range

16         from five years to 20 years.  And in working

17         with him, he is receiving counseling at the

18         present time.  We expect to have an expert

19         witness testify at trial.  And that

20         counseling would be very difficult to

21         continue if he's incarcerated at Shawnee

22         County Jail or outside of Shawnee County.

23                    And lastly, Your Honor, if it please

24         the Court, I know Mr. Hart's position in this

25         regard, but I would point out to the Court

1        that we don't think that the position of the

2        government has always been that Mr. Croucher

3        should be incarcerated.  And, in fact, if he

4        would have agreed to a-- accept a 15-year

5        sentence, the government would have been

6        prepared to recommend to the Court that he be

7        released pending sentencing.

8              There just isn't any likelihood that

9        he's going to pose a danger or that he will

10        flee in this regard, and I think he has a

11        proven track record of that.  And,

12        respectfully, we request the Court to

13        exercise its discretion in this matter.  And

14        if there are additional conditions the Court

15        wants to impose at this point, we certainly

16        would be willing to accept any reasonable

17        condition by the Court to allow him to

18        continue and assist his counsel pending

19        sentencing.  Thank you.

20              THE COURT:  All right.  18 U.S.C.

21        Section 3143(a) is the statute that covers

22        release or detention pending sentencing.  And

23        that statute, 3143(a), refers the Court to

24        Section 3142(b) and (c).  And 3142 subsection

25        (f) is the subsection that has to do with the

1        detention hearing, but 3142(e) is the section

2        that has to do with detention itself.

3                And this-- these offenses,

4        2252(a)(2) and 2252(a)(4), fall within the

5        rebuttable presumption offenses for

6        detention.  In other words, at a detention

7        hearing, whether it's pretrial or

8        presentencing, the judicial officer shall

9        order the detention of the person unless the

10       rebuttable presumption is rebutted for

11       certain offenses.  And this is one of those

12       offenses.  It's 3142(e)(3)(E), an offense

13       involving a minor victim under these various

14       sections.

15               And I've considered what Mr. Haney

16       has offered by way of rebuttal and find that

17       based on Mr. Croucher's violation of the

18       terms of his pretrial release that I've

19       already spoke to, he has not been able to

20       rebut the presumption based on the conduct of

21       Mr. Croucher alone.  So I'll order detention

22       at this point.

23               I agree.  I don't think, now that

24       I've read this, that this is a mandatory

25       detention statute, but it is a statute that

1          incorporates by reference the rebuttal of

2          presumption for certain types of offenses,

3          and I specifically find that presumption has

4          not been rebutted.  Mr. Croucher has behaved

5          in a way on pretrial release that causes the

6          Court to find that the presumption cannot be

7          rebutted in this case.

8                    So I'll order the marshals to take

9          him into custody at this time and we'll

10          return on December 20th at 9 a.m.

11                    All right.  And the next case we'll

12          call is Derrick Moore.

13                    (THEREUPON, the hearing

14          concluded).

15

16

17

18

19

20

21

22

23

24

25

```
1        UNITED STATES OF AMERICA  )
                                   )     ss:
2        DISTRICT OF KANSAS        )

3

4                    C E R T I F I C A T E

5

6            I, Sherry A. Harris, Certified Shorthand

7        Reporter in and for the State of Kansas, do

8        hereby certify that I was present at and

9        reported in machine shorthand the proceedings

10       had the 13th day of October, 2010, in the

11       above-mentioned court; that the foregoing

12       transcript is a true, correct, and complete

13       transcript of the requested proceedings.

14           I further certify that I am not attorney

15       for, nor employed by, nor related to any of

16       the parties or attorneys in this action, nor

17       financially interested in the action.

18           IN WITNESS WHEREOF, I have hereunto set

19       my hand and official seal at Topeka, Kansas,

20       this 11th day of January, 2011.

21

22                        /s/ Sherry A. Harris
                          Certified Shorthand Reporter
23

24

25
```